UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENZO LEE WRIDEN,<br>CDCR # F13625,<br><br>                     Plaintiff,<br><br>       vs.<br><br>R. ARIAS, S. VERNO, J. RAYES,<br>J. VELASQUEZ, A. LARA, D. RIVERA,<br>J. PRICE, H. VERDUZCO, C. MARCEL,<br>J. RAYGOZA, C. PONCE, J. TORRES,<br>H. RODRIGUEZ, M. RUELAS,<br>M. MARQUEZ, J. MARTINEZ,<br>J. FERREL, E. SALAZAR, A. GRAY,<br>E. HERNANDEZ, C. LOPEZ,<br>B. THORPE, B. VILLALABOS,<br><br>                 Defendants. | Case No.:  24-CV-1240 JLS (LR)<br><br>**ORDER DISMISSING FIRST AMENDED COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)**<br><br>(ECF No. 7) |

Plaintiff Lorenzo Lee Wriden ("Plaintiff" or "Wriden) is proceeding *pro se* with a civil action pursuant to 42 U.S.C. § 1983.  The Court previously granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), dismissed his original Complaint for failure to state a claim, and granted him leave to file an amended complaint.  *See* ECF No. 6.  Wriden has now filed a "Motion to Amend the Complaint," which this Court liberally construes as a First Amended Complaint ("FAC").  *See* ECF No. 7.  For the reasons discussed below, the

1    Court dismisses the FAC without prejudice for failure to state a claim.

2    **SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)**

3    **I.    Legal Standard**

4    Because Plaintiff is a prisoner proceeding IFP, the Court must screen the FAC

5    pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), and *sua sponte* dismiss it to the

6    extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants

7    who are immune.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc).

8    "The standard for determining whether Plaintiff has failed to state claim upon which relief

9    can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure

10    12(b)(6) standard for failure to state a claim."  *Watison v. Carter*, 668 F.3d 1108, 1112

11    (9th Cir. 2012).   Rule 12(b)(6) requires that a complaint "contain sufficient factual

12    matter . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*,

13    556 U.S. 662, 678 (2009) (internal quotation marks omitted).   While detailed factual

14    allegations are not required, "[t]hreadbare recitals of the elements of a cause of action,

15    supported by mere conclusory statements, do not suffice" to state a claim.  *Id*.  The "mere

16    possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me

17    accusation[s]" fall short of meeting this plausibility standard.  *Id.*

18    To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation

19    of a right secured by the Constitution and laws of the United States, and (2) that the

20    deprivation was committed by a person acting under color of state law."  *Tsao v. Desert*

21    *Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

22    **II.    Plaintiff's Allegations**

23    Plaintiff names 23 Defendants, all of whom appear to be on staff at Calipatria State

24    Prison ("CAL"): Roberto Aria, Sam Verno, J. Rayes, J. Velasquez, A. Lara, D. Rivera,

25    J. Price, H. Verduzco, C. Marcel, C. Ponce, J. Raygoza, H. Rodriguez, J. Torres, M. Ruelas,

26    M. Marquez, J. Ferrel, J. Martinez, E. Salazar, A. Gray, E. Hernandez, C. Lopez, B. Thorpe,

27    and B. Villalobos.  *See* FAC at 1.  In his FAC, Wriden lists numerous events in

28    chronological order, spanning from late 2021 to late 2024 and including references to a

defendant(s), date, and the legal basis for a claim. The FAC, however, is often short on detailed facts.

Widren begins with an allegation that on November 14, 2021, Arias "subjected [him] to a form of cruel and unusual treatment . . . when he . . . rehoused an inmate in a quarantine building," which put him at risk of contracting COVID-19. *Id.* ¶ 1. Widren then alleges that on January 14, 2022, Marcel "forced [Widren] to return his quarterly package in retaliation for [Widren's] submission" of an administrative grievance regarding inadequate COVID-19 protections submitted on November 20, 2021. *Id.* ¶ 2. Widren states that on January 21, 2022, he filed a grievance alleging retaliation "based on the events outlined above," presumably a reference to Marcel's alleged conduct. *Id.* ¶ 3.

Plaintiff next states that on April 23, 2022 and April 29, 2022, Raygoza and Rodriguez "allowed themselves to become goaded into participating in a criminal conspiracy to obstruct and retaliate against [Plaintiff] by falsif[ying] a Rule Violation Report" against Plaintiff. *Id.* ¶ 4. But again, Widren does not elaborate on what the circumstances or nature of the "false" rule violation report ("RVR") are or how Raygoza and Rodriguez were involved. Widren then states that on May 13, 2022, he filed a grievance against Raygoza and Rodriguez about the "events outlined above." *Id.* ¶ 5.

On May 5, 2022, Plaintiff filed a grievance alleging that his work supervisors were not "maintaining" the inmate pay schedule and that he had not received pay for work he performed in February 2022. *Id.* ¶ 6. He next alleges Gray, a "correctional supervisor cook," was "goaded into participating in a criminal conspiracy to obstruct and retaliate against [him]" for filing the May 5, 2022 grievance. *Id.* ¶ 7. Widren then filed a grievance against Gray on June 7, 2022. *Id.* ¶ 8.

On June 15, 2022, Widren filed another grievance alleging Rayes "participated in a criminal conspiracy to obstruct and violate[] [his] due process [right] to call witnesses" at an RVR hearing. *Id.* ¶ 9. On July 2, 2022, Verduzco was "goaded into participating in a criminal conspiracy to . . . retaliate" again him and other black inmates by "falsifying an RVR." *Id.* ¶ 10.

On July 8, 2022, Plaintiff filed a grievance against Hernandez alleging he was involved in a criminal conspiracy to retaliate against him. He states Hernandez "started to tap on [his] cell door at different time[s] throughout the early morning hours in [an] attempt to cause him sleep deprivation." *Id.* ¶ 11.

On August 12, 2022, Plaintiff filed a grievance against Verduzco and Lara for conspiring to violate his right to due process and equal protection. *Id.* ¶ 12. On August 25, 2022, he alleges Arias violated his right to equal protection by unenrolling him from a college program because of Wriden's RVRs. *Id.* ¶ 3.

On November 9, 2022, Wriden submitted a grievance against Ponce, Torres, and Hernandez, alleging they retaliated against him by not permitting him to return to his job as a cook. *Id.* ¶ 4. The grievance was not marked "received" by the appeals office until November 21, 2022. *Id.* On November 15, 2022, Ponce retaliated against Wriden by filing a "falsified" RVR. *Id.* ¶ 15.

Plaintiff filed a grievance against Raygoza on December 14, 2022, regarding a delay in "issuing" a "reheard RVR." *Id.* ¶ 16. Wriden then filed a grievance against Velasquez on January 21, 2023 for "conducting the reissue reheard RVR" in violation of his due process rights. *Id.* ¶ 17.

On January 27, 2023, Wriden was interviewed by the Office of Internal Affairs ("OIA") regarding a staff misconduct complaint he had filed on May 5, 2022.[1] *Id.* ¶ 8. On February 14, 2023, Marquez "goaded himself into participating in a criminal conspiracy to obstruct and retaliate against Plaintiff by falsifying an RVR." *Id.* ¶ 19. Wriden met with the OIA again on February 24, 2023, this time about a complaint concerning alleged staff misconduct filed on May 31, 2022.[2] *Id.* ¶ 20.

On March 12, 2023, Ferrel, Salazar, Price, and Velasquez allegedly conspired to

---

[1] It is not clear if this "complaint" was related to the grievance Wriden submitted on May 5, 2022, concerning a delay in receiving work pay. *See* FAC ¶ 6.

[2] Plaintiff does not provide any information on the nature of the alleged misconduct.

retaliate against Writen by filing a "false" RVR.  *Id.* ¶ 21.  The next day, March 13, 2023, Plaintiff was placed in administrative segregation based on false allegations that he had threatened staff.  *Id.* ¶ 22.  On March 15, 2023, Arias issued a decision regarding Writen's May 5, 2022 staff misconduct grievance, but Writen does not elaborate on the nature of the decision.  *Id.* ¶ 23.

On March 29, 2023, Ruelas allegedly "falsified a[n] RVR supplemental report" in retaliation for Writen filing a misconduct complaint against Ruelas on January 30, 2021. *Id.* ¶ 24.

On April 7, 2023, Arias issued a "memorandum in response" to Writen's June 8, 2022 allegation of misconduct by Raygoza.[3]  *Id.* ¶ 25.  On April 17, 2023, Villalobos conspired to violate Writen's due process rights by failing to postpone an RVR hearing so Writen could gather evidence and call witnesses.  *Id.* ¶ 26.

Plaintiff filed a grievance on May 4, 2023, regarding the alleged false RVR report issued on March 12, 2023 by Salazar, Ferrel, Price, and Velasquez.  *Id.* ¶ 28.  On May 17, 2023, Pinela allegedly "conspired" to retaliate against Plaintiff by issuing a false RVR against him.  *Id.* ¶ 29.

Defendant Ruelas allegedly came to Plaintiff's cell on June 6, 2023, and "harassed" him.  *Id.* ¶ 30.  Writen filed a grievance against Ruelas about the matter on the same day. *Id.*  On June 20, 2023, Ruelas issued a false RVR against Plaintiff.  *Id.* ¶ 31.

On July 15, 2023, Writen filed a grievance alleging Martinez was "aggressively unprofessional."  *Id.* ¶ 32.  On August 17, 2023, Martinez issued a false RVR against Plaintiff.  *Id.* ¶ 33.

On October 27, 2023, Plaintiff submitted a grievance against Lopez, alleging a "conspiracy to harass and obstruct."  *Id.* ¶ 34.  On November 3, 2023, Lopez issued a "falsified RVR" against Plaintiff.  *Id.* ¶ 35.

---

[3] Writen does not provide any specifics about the contents of the memorandum.

Plaintiff filed yet another grievance against Ruelas on September 20, 2023.  *Id.* ¶ 36. On November 13, 2023, Ruelas "conspired to obstruct and retaliate" against Wriden by filing a false RVR.  *Id.* ¶ 37.  And on November 14, 2023, Thorpe also filed a false RVR against Plaintiff.  *Id.* ¶ 38.  Wriden filed a grievance against each named defendant on November 20, 2023.  *Id.* ¶ 39.

On January 4, 2024, Wriden filed a grievance alleging he was denied his due process right to call witnesses and present evidence, presumably at an RVR hearing.  *Id.* ¶ 40.  He filed another grievance about the same matter the next day.  *Id.* ¶ 41.  On January 18, 2024 and March 20, 2024, Wriden attempted to send out legal mail, but it was returned after correctional staff "refus[ed] to adhere to policies."  *Id.* ¶¶ 42–43.  He filed a grievance regarding the matter on April 25, 2024.  *Id.* ¶ 44.

Wriden filed additional grievances on June 5, 2024 and June 12, 2024, alleging misconduct by Arias, Verno, Valdez, and "subordinates . . . mentioned in [the] Complaint."  *Id.* ¶ 46.  He also claimed Arias, Verno, and Valdez "inappropriately review[ed]" his staff misconduct complaints.  *Id.* ¶ 47.

On July 18, 2024, Plaintiff filed his original Complaint in federal court.  *Id.* ¶ 48. On July 29, 2024, Verduzco, Price, and Valdez "conspired . . . to obstruct and to retaliate against him" by working with Bloom,[4] a prison librarian, to falsify an RVR.  *Id.* ¶ 49. Plaintiff filed a grievance against Verduzco and Price on September 5, 2024.  *Id.* ¶ 50.

Finally, Wriden states Arias "and his subordinates" failed to properly address his administrative grievances from "2022 through 2024."  *Id.* ¶ 51.

## III.   Discussion

While Wriden does not separately list individual causes of action, the FAC references the Eighth Amendment, First Amendment retaliation, due process, equal protection, and conspiracy.  *See generally id.*

---

[4] Bloom is not listed as a defendant in the FAC.  *See* Fed. R. Civ. P. 10(a) (requiring that plaintiffs include the names of all parties in the caption of the complaint).

### A.    Eighth Amendment

Wriden alleges CAL Warden Arias "and/or his subordinates" violated his Eighth Amendment rights by "rehous[ing] an inmate in a[n] already quarantine[d] building," and thus placing Wriden at risk of contracting "the highly infectious COVID-19."  FAC ¶ 1. He also alleges Hernandez violated his Eighth Amendment rights by tapping on his cell door in the early morning hours, in an attempt to cause him to become sleep deprived.  *Id.* ¶ 11.

The Eighth Amendment prohibits conditions of confinement that involve the "unnecessary and wanton infliction of pain."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976).  Prison officials have a constitutional obligation to protect inmates from a "serious, communicable disease."  *See Helling v. McKinney*, 509 U.S. 25, 32–34 (1993).  A prisoner claiming an Eighth Amendment violation based on conditions of confinement "must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place."  *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

First, Plaintiff fails to state an Eighth Amendment claim against Arias.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77. Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Here, however, Wriden does not clearly allege Arias personally participated in, or directed the inmate transfer.  Moreover, it is unclear from the allegations in the FAC whether the "rehoused" inmate was known to have an active case of COVID-19 before being moved.  And even if the inmate's COVID-19 status was known to some staff, there are no facts suggesting Arias (or his subordinates) were personally aware of it.  Nor is it clear this inmate posed a serious risk to Plaintiff, who does not provide any facts about

where this unnamed inmate was housed within the unit, in comparison to Plaintiff. In short, Plaintiff's conclusory allegations are insufficient to state an Eighth Amendment claim against Arias. *See Iqbal*, 556 U.S. at 678.

Second, Wriden fails to state an Eighth Amendment claim against Hernandez. Courts have recognized a general right against excess noise and prison conditions that deprive inmates of "identifiable human need[s]," such as sleep. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *accord Keenan v. Hall*, 83 F.3d 1083, 1090–91 (9th Cir. 1996), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998) (holding "the Eighth Amendment require[s] that [inmates] be housed in an environment . . . reasonably free of excess noise"). Here, however, Plaintiff alleges only that Hernandez "tap[ped] on [his] cell door at different time[s] throughout the early morning hours" on July 8, 2022, in an "attempt[] to cause [him] sleep deprivation." FAC ¶ 11. Allegations of such minor and isolated noise are insufficient to amount to a "serious deprivation" required under the Eighth Amendment's objective prong. *Garcia v. Diaz*, No. 5:20-cv-02564-FLA (MAA), 2021 WL 4775638, at *6 (C.D. Cal. July 14, 2021) ("While sleep is a human need protected by the Eighth Amendment, isolated instances of an inmate being deprived of conditions conducive to sleep do not satisfy the objective prong of the Eighth Amendment." (citations omitted)). Furthermore, the FAC contains no allegations to support the reasonable inference that Hernandez acted with deliberate indifference towards an excessive risk to Plaintiff's health or safety. *See Farmer,* 511 U.S. at 834.

Based on the above, Plaintiff has failed to state an Eighth Amendment claim in his FAC. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### B.    *First Amendment Retaliation*

Wriden alleges all 23 Defendants retaliated against him for filing administrative grievances, in violation of his First Amendment rights. Specifically, he claims Raygoza, Rodriguez, Gray, Verduzco, Hernandez, Ponce, Marquez, Torres, Ruelas, Martinez, Ferrel, Salazar, Price, Velasquez, Lopez, Ponce, Pinela, and Thorpe, largely on separate occasions, retaliated against him by issuing "false" RVRs against him. *See* FAC ¶¶ 4, 7, 10, 15, 19,

21, 24, 29, 31, 33, 35, 37.  He also alleges Rayes, Raygoza, Velasquez, Arias, Villalobos, Verno, and Valdez retaliated against him by depriving him of other procedural protections related to RVR hearings and grievance review.  *See id.* ¶¶ 9, 16, 17, 23, 26, 44, 45, 47.  Finally, he alleges Marcel retaliated against him by "forc[ing] [him] to return his quarterly package." *Id.* ¶ 2.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim.  *Silva v. Di Vittorio*, 658 F.3d 1090, 1104 (9th Cir. 2011).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005); *Watison*, 668 F.3d at 1114–15.

Adverse action taken against a prisoner "need not be an independent constitutional violation.  The mere threat of harm can be an adverse action." *Watison*, 688 F.3d at 1114 (internal citations omitted).  A causal connection between the adverse action and the protected conduct must be alleged.  *Id.*  The plaintiff must also allege either a chilling effect on future First Amendment activities, or that he suffered some other harm that is "more than minimal."  *Id.*  A plaintiff successfully pleads that the action did not reasonably advance a legitimate correctional goal by alleging, in addition to a retaliatory motive, that the defendant's actions were "arbitrary and capricious" or that they were "unnecessary to the maintenance of order in the institution." *Id.*

Here, Wriden has alleged he was engaged in protected conduct.  *See Rhodes*, 408 F.3d at 568; *Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.").  The Court also finds Wriden has plausibly alleged Defendants each took adverse action against him, in the form of issuing "false" RVRs, denying him procedural protections during RVR hearings, and "forc[ing] the return of his quarterly package." *See Hines v. Gomez*,

9

108 F.3d 265, 268–69 (9th Cir. 1997) (explaining that a false disciplinary charge against a prisoner in retaliation for filing grievances constitutes adverse action); *Rhodes*, 408 F.3d at 568 (finding adverse action element satisfied where officers "arbitrarily confiscated, withheld, and eventually destroyed [the plaintiff's] property").

Nonetheless, Plaintiff fails to state a claim because he has not alleged any facts to support the other three elements of a retaliation claim as to any defendant. *See Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009). First, Wriden fails to allege any of the 23 defendants were aware he had submitted any specific grievance. If a defendant does not know of a plaintiff's protected conduct, it cannot substantially motivate a defendant's subsequent conduct. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995) (noting that plaintiff's "sheer speculation" that defendants had knowledge of his protected conduct was insufficient to show retaliatory intent); *Flynn v. City of Santa Clara*, 388 F. Supp. 3d 1158, 1164 (N.D. Cal. 2019) ("[I]f [plaintiffs] are claiming they were mistreated because of their speech, then they must show that each officer knew about their speech in the first place."); *Hammler v. Alvarez*, No. 18-CV-326-AJB(WVG), 2019 WL 422575, at *9 (S.D. Cal. Feb. 4, 2019) ("Because Plaintiff alleges no facts to show that [defendant] had any prior knowledge of this grievance, there are no facts to suggest that [defendant] issued the [rules violation report] in retaliation for the filing of a grievance.").

Furthermore, retaliation is not established simply by showing adverse activity by a defendant took place after protected speech; rather, Plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this"). While timing may be considered circumstantial evidence of retaliatory intent, "timing alone is insufficient" to support an inference that prison officials took an adverse action against a prisoner in retaliation *because of* a prisoner's participation in protected conduct. *Pratt*, 65 F.3d at 808. Here, Wriden merely lists a series of events during which adverse actions took place at some point after he filed grievances, but he provides no facts showing any other nexus between any of these events. Such

speculation of retaliatory motive is insufficient to give rise to a claim for relief. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014).

Finally, Wriden has also failed to plead the absence of "legitimate correctional goals," or the "chilling effect" required to state a plausible retaliation claim. *Pratt*, 65 F.3d at 806 (citing *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)); *see also Jenkins v. Drake*, No. CV 19-5656 ODW (PVC), 2020 WL 2771999, at *9 (C.D. Cal. May 5, 2020) (dismissing retaliation claim while noting that the plaintiff continued to file grievances and threatened court action to protect his rights, and the FAC failed to make even conclusory allegations about the chilling effect of the defendants' actions).

In sum, Plaintiff's conclusory allegations are insufficient to state a First Amendment retaliation claim against any defendant. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

## C.    *Equal Protection*

Wriden appears to allege Arias and Raygoza violated his right to equal protection. Specifically, Plaintiff asserts Arias denied him "equal treatment" by "unenrolling" him from a college program "due to Plaintiff not being free [of RVRs]." FAC ¶ 13. Plaintiff also alleges Raygoza violated his right to equal protection by delaying the reissuance of an RVR "without justification." *Id.* ¶ 16.

The Equal Protection Clause commands that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, a prisoner must allege he was intentionally discriminated against based on his membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001). Alternatively, a plaintiff can show he was intentionally treated differently from other similarly situated inmates without a rational basis for such disparate treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (involving a plaintiff whose equal protection claim "did not allege membership in a class or group").

Here, Wriden fails to allege any facts showing he is a member of a protected class.

*See United States v. Whitlock*, 639 F.3d 935, 941 (9th Cir. 2011) ("[N]either prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes."). Nor has Wriden alleged any facts showing he was intentionally treated differently from other similarly situated prisoners who were removed from education classes or who faced RVR hearings. Wriden's mere allegation that he was treated differently than other inmates is insufficient to state a claim. *See Hartmann v. Cal. Dep't of Corrs. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013) (explaining that the Equal Protection Clause does not require that "all prisoners must receive identical treatment and resources"). Accordingly, Wriden has failed to state an equal protection claim in his FAC. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Twombly*, 550 U.S. at 555 n.3.

### D.    Due Process

Wriden appears to allege his right to due process was violated when Rayes and Villalobos denied him an opportunity to call witnesses at two different RVR hearings. *See* FAC ¶¶ 8, 26. He also alleges Raygoza and Velasquez improperly delayed RVR hearings. *Id.* ¶¶ 16, 17.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). As discussed in this Court's previous screening order, Plaintiff's due process claims require a two-step analysis: "First, [the Court must] determine whether the inmate was deprived of a constitutionally protected liberty . . . . Second, [the Court] examine[s] whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Only if the prisoner alleges facts sufficient to show a protected liberty interest must courts next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

Here, while Wriden alleges he was denied certain procedures related to RVR hearings, he has again failed to plausibly allege he was deprived of a protected liberty interest. *See id.* To do so he must allege he suffered an "atypical, significant deprivation."

*Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (quoting *Sandin v. Connor*, 515 U.S. 472, 486 (1995)).   In determining whether sanctions pose an atypical and significant hardship, courts look to the prisoner's conditions of confinement, the duration of the sanction, and whether the sanction will affect the duration of the prisoner's sentence. *See Keenan*, 83 F.3d at 1088–89.  But Wriden has failed to provide any facts regarding the outcome of the RVR hearings he alleges were conducted without adequate process.  He has not stated whether he was found guilty of the RVRs, whether he was sanctioned, and, if so, what the sanction was.  Therefore, Wriden has failed to state a due process claim.[5] *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Ramirez*, 334 F.3d at 860.

### E.    Conspiracy

Finally, Wriden appears to allege defendants[6] conspired to both retaliate against him and to violate his due process rights.  To state a conspiracy claim under § 1983, a plaintiff "must state specific facts to support the existence of the claimed conspiracy."  *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989).  The plaintiff must show "an agreement or meeting of the minds to violate constitutional rights," and "[t]o be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy."  *Crowe v. County of San Diego*,

---

[5] To the extent Wriden seeks to claim his due process rights were violated by the issuance of "false" RVRs, the Court notes that the mere allegation of "false" disciplinary charges is generally insufficient to state a due process claim. *See Garrott v. Glebe*, 600 F. App'x 540, 545 (9th Cir. 2015) (stating there is no clearly established federal law that "a prisoner has a right to be free from false accusations"); *Smith v. Albee*, No. 2:15-cv-1598 KJN P, 2016 WL 6094471, at *4 (E.D. Cal. Oct. 18, 2016) (stating the "falsification of disciplinary reports does not state a stand-alone constitutional claim," because "[t]here is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest").  In addition, as discussed in this Court's previous screening order, there no due process right to a specific prison grievance procedure.  *See Ramirez*, 334 F.3d at 860 (stating "inmates lack a separate constitutional entitlement to a specific prison grievance procedure"); *Smith v. Swaney*, 399 F. App'x 234, 234 (9th Cir. 2010) (affirming dismissal of plaintiff's due process claim because "a prisoner enjoys no constitutional right to a prison grievance procedure").

[6] Wriden appears to allege a conspiracy claim against each of the defendants, except for Marcel.  *See* FAC ¶ 2.

24-CV-1240 JLS (LR)

608 F.3d 406, 440 (9th Cir. 2010).  "Conspiracy is not itself a constitutional tort under § 1983," and it "does not enlarge the nature of the claims asserted by the plaintiff, as there must always be an underlying constitutional violation."  *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012); *Quiroz v. Horel*, 85 F. Supp. 3d 1115, 1147 (N.D. Cal. 2015).  In short, a conspiracy claim under § 1983 requires: "(1) the existence of an express or implied agreement among the defendant officers to deprive [the plaintiff] of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement."  *See Avalos v. Bacca*, 596 F.3d 583, 592 (9th Cir. 2010).  A failure to state a colorable underlying constitutional violation is fatal to a conspiracy claim based on the same allegations.  *Id.*

Here, Wriden repeats virtually the same conclusory conspiracy allegation as to each of the individual defendants throughout his FAC.  He alleges Raygoza, Rodriguez, Gray, Rayes, Martinez, Lopez, Ruelas, Verduzco, Ponce, Torres, Hernandez, Marquez, Ferrel, Salazar, Velasquez, Price, Pinela, and Thorpe were "goaded into participating in a criminal conspiracy to obstruct and retaliate against [him]."  *See* FAC ¶¶ 4, 7, 10, 14, 15, 19, 21, 24, 28, 29, 31, 33, 35, 37, 38.  He also contends Rayes, Verduzco, Lara, Villalobos, Velasquez, Verno, and Arias were "goaded into participating in a criminal conspiracy to obstruct and violate his due process rights."  *See id.* ¶¶ 9, 12, 17, 26, 41, 45.

These conclusory statements lack the specificity required to state a conspiracy claim against any defendant.  *See Burns*, 883 F.2d at 821.  Specifically, Wriden fails to allege facts suggesting the existence of any agreement, express or implied, between any of the defendants.  *See Crowe*, 608 F.3d at 440.  In addition, as discussed above, Wriden has failed to allege a colorable retaliation or due process claim and therefore cannot show an "actual" constitutional deprivation resulted from any purported conspiracy.  *See Avalos*, 596 F.3d at 592.  Thus, Plaintiff has failed to state a conspiracy claim against any Defendant.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

/ / /

/ / /

**IV.    Leave to Amend**

In light of his pro se status, the Court grants Plaintiff *one final opportunity* to amend his pleading and address the pleading deficiencies identified in this Order and the Court's prior dismissal Order (ECF No. 6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." (internal quotation marks omitted)).

**CONCLUSION**

Accordingly, the Court **ORDERS** as follows:

1.    **DISMISSES** Plaintiff's First Amended Complaint (ECF No. 7) in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

2.    **GRANTS** Plaintiff **<u>forty-five (45) days</u>** leave from the date of this Order in which to file a second amended complaint that cures the deficiencies of pleading noted in this Order.  Plaintiff's second amended complaint must be complete by itself without reference to his previous pleadings.  *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived").

*If Plaintiff fails to timely file a Second Amended Complaint, the Court will enter a final order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment.*  *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of

/ / /

/ / /

/ / /

/ / /

/ / /

the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  June 26, 2025

Hon. Janis L. Sammartino
United States District Judge

24-CV-1240 JLS (LR)